IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JOAN AARESTAD,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>TRICON REALTY, INC., and,<br>MINERAL COUNTY, a political<br>subdivision of the State of Montana,<br><br>　　　　Defendants. | CV 16-51-M-DLC-JCL<br><br><br>FINDINGS AND<br>RECOMMENDATION |

Before the Court is Plaintiff Joan Aarestad's Fed. R. Civ. P. 56 motion for partial summary judgment against Defendant Mineral County. For the reasons discussed, the Court recommends the motion be denied.

**I.    Background**

Aarestad is the present owner of Lot 1 in the "Two River's Acreage" subdivision in St. Regis, Mineral County, Montana. She accesses her property from Two Rivers Road which traverses Lot 2 – a lot owned by a non-party to this litigation – and into her Lot 1. Two Rivers Road was originally dedicated for "public use" at the time the subdivision was developed. Aarestad commenced this action and filed her summary judgment motion seeking to establish that the segment of Two Rivers Road which extends into her Lot 1 is no longer a "public

1

use" road, but is instead her private driveway. Aarestad seeks a judicial declaration to that effect, and she requests that the Mineral County records be modified to reflect that the road segment is now her private property – a private driveway.

## II. Applicable Law

### A. Summary Judgment Standards

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986). Once the moving party has satisfied his burden, he is entitled to summary judgment if the non-moving party fails to designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986). In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party and draws all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir.

2007).

### B.  Application of Montana Law

Jurisdiction over this controversy is predicated upon diversity of citizenship jurisdiction. *See* 28 U.S.C. § 1332. Therefore, the Court must apply the substantive law of Montana, the forum state. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir. 2001).

## III.  Discussion

In 1969, individuals who are not parties to this action developed real property in Mineral County, and recorded the plat for the "Two River's Acreage" subdivision ("the Plat") in the county's records on December 1, 1969. (*See* Doc. 59 at 5 of 8.) The Plat identifies individual Lots numbered 1 (located at the northern end of the subdivision) through 19 (located at the southern end of the subdivision).

Aarestad is the present owner of Lot 1 in the Two Rivers Acreage subdivision. Aarestad's parents, Laralee and Everett Aarestad, acquired the property in 1971, and conveyed the property to Aarestad in 2012.

The Plat shows the layout of the Two River's Acreage subdivision. (Doc. 59 at 5 of 8.) The eastern side of the subdivision is bounded by the Clark Fork River, and the Plat identifies a strip of land adjacent to the western boundaries of

Lots 3 through 19, and it labels the strip of land as "road." This road apparently is Two Rivers Road.

The Plat reflects that at the southwest corner of Lot 2 the strip of land or "road" turns northeasterly into Lot 2 and proceeds into Lot 1, thereby bisecting both Lots 1 and 2. (Doc. 59 at 5 of 8.) Aarestad uses Two Rivers Road, and this segment of the road that bisects Lots 1 and 2, to access her Lot 1. Significantly, and at the root of this case, the Plat expressly states on its face that "the roads and easements are hereby dedicated to public use." (Doc. 59 at 2 & 6 of 8.) It is this "public use" dedication from 1969 which Aarestad is challenging.

The parties agree to various factual matters related to Two Rivers Road as follows: Mineral County has not declared the strip of land, or "road," across Lots 1 and 2 as a "county road", and its public records do not contain a petition seeking to declare the strip of land as a county road. (Doc. 59 at ¶ 6.) Mineral County has provided road maintenance and snow removal on that portion of the road adjacent to Lots 3 through 19 as shown on the Plat, but it has not provided such maintenance or snow removal on that portion of the road which crosses Lots 1 and 2. Instead, the Aarestad family has performed its own road maintenance and snow removal on that segment of the road crossing Lots 1 and 2 since 1971.

The parties also agree as to existing signs on Two Rivers Road. There is a

"Dead End" sign posted for northbound traffic on Two Rivers Road located near Lot 6. At the southern boundary of Lot 2 there is a sign on the road which reads "County Road Maintenance Ends Here." And in the 1990s the owners of Lots 1 and 2 posted a "Private Drive" sign on the road at the southern boundary of Lot 2 for northbound traffic on Two Rivers Road. Mineral County personnel have observed the "Private Drive" sign since the time it was posted by the lot owners.

The parties further agree there are no public structures on either Lots 1 or 2, and there exists no public access to the Clark Fork River from either Lots 1 or 2. And there is no exiting road that extends beyond the northern boundary of Lot 1 into the property located north of Lot 1.

Finally, the parties agree that the segment of Two Rivers Road which crosses Lots 1 and 2 in the Two Rivers Acreage subdivision is not a "county road" as defined in Montana law at Mont. Code Ann. § 7-14-2101(4)(b). And the Court finds no evidence in this case demonstrating that the referenced segment of the Two Rivers Road has been established as a "county road" under section 7-14-2101(4)(b).

Mineral County instead suggests the road segment across Lots 1 and 2 constitutes a public right-of-way open to public use. Under Montana law, a "public highway" includes a road that was "dedicated to public use[.]" Mont.

5

Code Ann. § 60-1-103(22)(b). Aarestad does not oppose Mineral County's designation or characterization of the road in this regard. And since the 1969 Plat "dedicated" the subject road to "public use", the Court concludes § 60-1-103(22)(b) establishes the road at issue as a "public highway." Therefore, the Court will address Aarestad's theories of recovery in the context of a "public highway" or a public-use road, not in the context of a "county road."

A. **Abandonment of the Road on Lot 1**

The law in Montana relative to the issue of whether a governmental entity abandoned a public road, a public easement, or public property is clear. "[T]he pivotal element [...] is a showing of clear intent to abandon." *State v. Fisher*, 75 P.3d 338, 340 Mont. 2003) (citing *Baertsch v. County of Lewis and Clark*, 845 P.2d 106, 111 (Mont. 1992) (finding no evidence that Lewis and Clark County intended to abandon a "public right-of-way")). The governmental entity's conduct on which a plaintiff relies to demonstrate abandonment "must be some affirmative official act so decisive and conclusive as to indicate a clear intent to abandon." *Id*. Abandonment cannot be implied from conduct. *Id*; *McCauley v. Thompson-Nistler*, 10 P.3d 794, 800 (Mont. 2000). And "[m]ere non-use, even for extended periods of time, is generally insufficient, by itself, to indicate an intent to abandon." *State v. Fisher*, 75 P.3d at 340. The party claiming that an

abandonment occurred bears the "burden of proving that acts claimed to constitute abandonment demonstrate a decisive and conclusive intent to abandon the road." *Id*. (citing *Rieman v. Anderson*, 935 P.2d 1122, 1126 (Mont. 1997)).

Although *State v. Fisher* involved the abandonment of a "county road", the Montana Supreme Court in *Smith v. Russell*, 80 P.3d 431 (Mont. 2003) applied the exact same legal standards for the abandonment of public property to the issue of the abandonment of a "public highway" as defined in Mont. Code Ann. § 60-1-103(22). *Smith*, 80 P.3d at 435. *See also McCauley v. Thompson-Nistler*, 10 P.3d 794 (Mont. 2000) (finding facts did not demonstrate abandonment of what was found to be a "public highway"). The facts in *Smith* did not establish that the City of Shelby had committed an affirmative official act that was so decisive and conclusive as to indicate a clear intent by it to abandon the subject "public highway." *Id*. Therefore, the Court will apply the foregoing legal standards to Aarestad's theory that the Two Rivers Road, a public highway, has been abandoned.[1]

---

[1] Aarestad recognizes the road segment is not a "county road." Nonetheless, she references the statutory provisions enacted for the purpose of identifying the legal procedures for abandoning or vacating a "county road." *See* Mont. Code Ann. 7-14-2615. And she refers to the definition of "abandonment" as applied in the statutes governing "county roads." *See* Mont. Code Ann. 7-14-2601(3)(b). Aarestad suggests these statutory procedures provide an analogous framework for analyzing the public use abandonment issue in this case. But, as Aarestad concedes, the referenced statutes pertain only to a "county road," not a "public

Aarestad identifies several factors and events which she asserts establish that Mineral County has abandoned the "public use" dedication originally established by the Two Rivers Plat in 1969 – at least to the extent the dedication applies to the segment of the road that crosses Lots 1 and 2. With respect to that segment of the road, Aarestad emphasizes Mineral County has not performed road maintenance or snow removal. But the absence of the county's performance of such work is not an act demonstrating an intent to abandon because under Montana law mere non-use, even for extended periods of time, does not reflect an intent to abandon.

Aarestad also emphasizes it is undisputed that the "Dead End" sign is posted on the Two Rivers Road, and "Private Drive" and "County Road Maintenance Ends Here" signs are posted where the road enters Lot 2 at its southern boundary. County personnel have been aware of the "Private Drive" sign for several years and, therefore, Aarestad argues Mineral County has acquiesced to the private nature of the road.

The Court finds that the signs posted on the road do not qualify as affirmative official acts so decisive and conclusive as to indicate a clear intent by

---

use" road, and they are superfluous in view of the legal abandonment standards which directly apply to the issue of the abandonment of public property or public highways.

Mineral County to abandon the road extending into Lots 1 and 2. A sign that informs the public that no public maintenance is performed on a road is not a sign that prohibits travel upon the road. It merely informs the public as to the extent of maintenance on the road and does not reflect the county's intent to abandon the road. *See e.g. Giese v. Morton County*, 464 N.W.2d 202, 204 (N.D. 1990). And Mineral County's alleged acquiescence to the "Private Drive" sign is not an affirmative official act expressing an intent to abandon the road. Abandonment cannot be established by implication (*McCauley v. Thompson-Nistler*, 10 P.3d 794, 800 (Mont. 2000)), and the rights of the public to its public roads "cannot be lost by acquiescence[.]" *City of Billings v. Pierce Packing Co.*, 161 P.2d 636, 639 (Mont. 1945) (citation and quotation omitted).

Aarestad identifies other circumstances and events which she contend demonstrate Mineral County abandoned the public use dedication. In 1996, a developer proposed a subdivision north of Aarestad's Lot 1, and the developer requested that Mineral County allow the developer to use Two Rivers Road to access the new subdivision. Aarestad asserts Mineral County denied the developer's request for access because the segment of the road crossing Lots 1 and 2 was too narrow, not suitable for two-way traffic, and did not comply with the county's subdivision requirements. (Doc. 55 at ¶¶ 27-28.)

The Court finds the evidence of Mineral County's consideration and denial of the developer's request in 1996 to use the subject road for a new subdivision does not equate to evidence of Mineral County's intent to abandon the road. At most, the circumstances suggest Mineral County found the existing road was inadequate to support the extent of the use proposed and requested by the developer. But Mineral County's denial of that request does not mean it chose to abandon the road for all other "public uses." This evidence is insufficient to demonstrate a clear intent to abandon.

Finally, with regard to the referenced Mineral County subdivision regulations, Aarestad points out that the regulations impose certain road design standards. The regulations provide that a subdivision lot may not be "divided by a road, alley or right-of-way or access easement[,]" they require a cul-de-sac at the terminal point of a road, they require that a right-of-way road be 50-60 feet wide, and they require a "roadway" to be at least 20 feet wide. (Doc. 55 at ¶¶ 43-44.) The segment of the road at issue in this case which bisects Lots 1 and 2 does not meet the referenced road design standards Mineral County adopted in the subdivision regulations. And Aarestad further suggests the road cannot be improved to meet those standards. Therefore, Aarestad suggests Mineral County has abandoned the non-conforming road segment. The Court disagrees.

Aarestad relies upon Mineral County's subdivision regulations which were updated in 2011 long after the Two Rivers Acreage Plat was approved in 1969. (Doc. 55 at ¶ 42.)  Undisputedly, the road design standards in the regulations would apply to roads in subsequent subdivision proposals. But there is no evidence in the record establishing the standards apply retroactively to subdivision roads approved years prior to the regulations.  Aarestad's argument seeks to establish that the new subdivision regulations implicitly abandon all non-conforming roads.  But as a matter of law, abandonment cannot be demonstrated by implication.

Based on the foregoing, the Court concludes Aarestad has not met her summary judgment burden with respect to the issue of whether Mineral County has abandoned the segment of Two Rivers Road which crosses her Lot 1.  The facts on which she relies to demonstrate abandonment, either by themselves or taken collectively, do not establish the absence of a genuine dispute as to any material fact and that she is entitled to judgment as a matter of law.  The facts do not support the conclusion that Mineral County committed an affirmative official act, or acts, which decisively and conclusively indicate a clear intent to abandon the road.  Aarestad's motion should be denied in this respect.

Aarestad further argues that the public use right of way has been

extinguished as a matter of Montana statutory law. Aarestad relies upon the statute which provides that "a servitude is extinguished: [...] (c) by the performance of any act upon either tenement by the owner of the servitude or with the owner's assent that is incompatible with its nature or exercise[.]" Mont. Code Ann. § 70-17-111(1)(c). Aarestad argues that all of the factors which support her abandonment theory also support the conclusion that Mineral County has engaged in acts which are incompatible with the nature and exercise of the road dedicated to "public use." But for the same reasons discussed, Aarestad has not established the absence of a genuine issue of material fact supporting the conclusion that Mineral County's actions and the events that have transpired over the years were incompatible with the nature and exercise of the public use dedication of the road at issue. Aarestad's argument lacks merit.

### B. <u>Aarestad's Prescriptive Rights to the Road on Lot 1</u>

As an alternative to her abandonment theory, Aarestad argues her parents, as predecessors to her interest in Lot 1, obtained prescriptive easement rights to the segment of the road crossing Lots 1 and 2 thereby extinguishing the "public use" designation of the road. "Prescriptive easements may be proved by public or private use, but in either case, the party claiming the right must show open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement

for the full statutory period." *McCauley v. Thompson-Nistler*, 10 P.3d 794, 801 (Mont. 2000). The statutory period for a prescriptive easement is 5 years. Mont. Code Ann. § 70-19-401; *Downing v. Grover*, 772, P.2d 850, 852 (Mont. 1989), overruled on other grounds by *Wareing v. Schreckendgust*, 930 P.2d 37 (Mont. 1996).

Mineral County, however, argues a private party cannot acquire prescriptive easement rights on a "public use" road, and cannot thereby convert the public road to a private road. Mineral County is correct.

In general, under Montana law, "title to public roads may not be obtained by adverse possession." *McCauley*, 10 P.3d at 800. And more specific to the prescriptive easement rights theory on which Aarestad relies, under Montana law a private party "cannot establish a prescriptive easement by traveling on a public road." *Cummings v. Canton*, 796 P.2d 574, 576 (Mont. 1990). "A public road is one which all people have a right to use[]" and, therefore, "[t]he open and public nature of the road forestalls its use from being adverse or exclusive." *Id*. With respect to a street "dedicated to the public [...] the statute of limitations does not run in favor of those who occupy property of this character; [...and] no title can be acquired thereto by such occupancy, no matter how long it has continued, and whatever may have been its character[.]" *City of Billings v. Pierce Packing Co.*,

161 P.2d 636, 639 (Mont. 1945) (citation and quotation omitted). Therefore, as a matter of law, Aarestad cannot acquire prescriptive easement rights to a "public highway" or a road that was dedicated to "public use." Aarestad's motion should be denied in this respect.

Aarestad suggests that there exists a legally viable theory by which she can adversely possess and reacquire title to a route over which a public right of way or easement exists. *See Dome Mountain Ranch, LLC v. Park County*, 37 P.3d 710, 714 (Mont. 2001) (recognizing that "a public prescriptive easement on a private road may be extinguished by reverse adverse possession"). But that theory of adverse possession applies only where the public use which the landowner seeks to adversely possess was established through a public prescriptive easement. *McCauley v. Thompson-Nistler*, 10 P.3d 794, 801 (Mont. 2000). There exists no decisional law in Montana recognizing that fee title to a public road can be acquired through adverse possession when the road was formally dedicated to public use, as opposed to a public way that was established through prescriptive use. Rather, as discussed above, a theory of adverse possession cannot be used to acquire title to a "public highway." Aarestad's theory lacks merit.

    **C.**    **Adverse Possession of the Land on which the Road Segment Sits**

Mineral County's brief in opposition to Aarestad's summary judgment

motion refers to the affidavit of Jane Eby, a licensed surveyor who reviewed a recent land survey of the Two River's Acreage subdivision conducted by Michael Drenth of Eby and Associates. (Doc. 72-2 at ¶¶ 2-3.) And she also reviewed the Two River's Acreage Plat. In substance, Eby concluded that the strip of land identified as the "road" on the Plat is an independent strip of land that is not included within the acreage of any of the Lots in the subdivision. She concluded, for example, that the owners of Lots 1 and 2 do not own the strip of land that is the segment of the road at issue in this case, and it is instead "owned in fee by the successors of the" individuals who developed the subdivision in 1969. (Doc. 72-2 at ¶ 16.)

In view of Eby's potential revelation of new facts previously unknown to the parties, Aarestad presents a new summary judgment argument in her reply brief. Aarestad argues that if she does not own the fee title interest in the strip of land that is the subject road as Eby suggests, then as a matter of law her parents, and she as the successor in interest, have acquired fee title to that land under the theory of adverse possession "as against the original Grantors of Lots 1 and 2," i.e. the developers of the Two River's Acreage subdivision and their successors in interest. (Doc. 74 at 2-6.)

The Court finds Aarestad's new theory of recovery in this case is defective

for two reasons. First, the Court will not consider a new argument for summary judgment that is raised for the first time in the movant's reply brief. Second, and more significantly, neither the original developers of the Two River's Acreage subdivision, nor their successors in interest, are parties to this action. Aarestad cannot pursue, in this present action, a judgment for adverse possession as against individuals or entities which are not parties to this action. Such parties are required to be joined as persons claiming "an interest relating to the subject of the action," and this action would impair or impede such persons' ability to protect that interest. *See* Fed. R. Civ. P. 19(a). Therefore, the Court will not address Aarestad's newly raised theory of adverse possession against non-parties.

### IV. Conclusion

Based on the foregoing, the Court concludes Aarestad has failed to demonstrate the absence of a genuine issue of a material fact, and that she is entitled to summary judgment on her abandonment and prescriptive easement theories. Therefore, IT IS RECOMMENDED that Aarestad's summary judgment motion be DENIED.

DATED this 23rd day of October, 2017.

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge